FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 27, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>vs.<br><br>LEE M. HERRING and SHEILA M. HERRING, husband and wife, dba L&S ORCHARDS; STATE OF WASHINGTON, DEPARTMENT OF LABOR & INDUSTRIES; BROOK LAKE ORCHARDS, a Washington corporation; LOIS RALSTON; RICK ARMSTRONG and CHRISTINE ARMSTRONG, husband and wife; and DAVE PONOZZO and RANDI PONOZZO, husband and wife,<br><br>               Defendants. | No. 2:22-cv-00036-MKD<br><br>ORDER GRANTING MOTION FOR DEFAULT JUDGMENT; DEFAULT JUDGMENT AND ORDER OF FORECLOSURE<br><br>**ECF No. 16** |

Before the Court is Plaintiff's Motion for Default Judgment and Order of Foreclosure, ECF No. 16. This matter was submitted for consideration without oral argument. The Court has considered the briefing, the record, and is fully informed. No Defendant has appeared, responded to the Order of Default issued by the Clerk of Court on June 13, 2022 (ECF No. 15), or otherwise participated in

DEFAULT JUDGMENT AND ORDER OF FORECLOSURE - 1

the pending action.  There being no reason for further delay and for the below reasons, Plaintiff's Motion for Default Judgment and Order of Foreclosure (ECF No. 16) is **GRANTED.**

## BACKGROUND

### A.    Factual History

Defendants Lee M. Herring and Sheila M. Herring d/b/a L&S Orchards (Defendants Herring) executed and delivered to FSA promissory notes dated May 31, 2013 (Fund Code 41, Loan No. 03) and February 16, 2016 (Fund Code 44, Loan No. 11).  ECF No. 1, Exhibits A, R.

The 2013 promissory note was in the amount of $300,000 and secured by (1) a mortgage of real estate in Grant County, Washington, identified as Assessor's Tax Parcel No. 171179000, owned by Defendants Herring (Auditor's File Nos. 1317881 and 1327144[1]), and (2) nine security agreements encumbering various farm products, supplies, and farm equipment.  ECF No. 1, Exhibits A–K; ECF No. 18.  FSA's security interests from these security agreements were perfected by two UCC-1 financing statements.  The first financing statement was

---

[1] The mortgage was re-recorded to include dates missing from the original recorded document.  ECF No. 1, Exhibit B at 1; ECF No. 18.

DEFAULT JUDGMENT AND ORDER OF FORECLOSURE - 2

filed on October 31, 2012, under File No. 2012-305-3833-6.[2] ECF No. 1,

Exhibit L. The second was filed on June 17, 2013, under File No. 2013-170-9187-

7.[3] ECF No. 1, Exhibit P. The mortgage and security agreements were recorded in

the State of Washington. ECF No. 1, Exhibits B–K; ECF No. 18.

The 2016 promissory note was in the amount of $30,300 and secured by a

second mortgage of real estate in Grant County, Washington, identified as

Assessor's Tax Parcel No. 171179000, owned by Defendants Herring (Recording

_____

[2] This financing statement defined the collateral, in relevant part, as "Crops,

livestock, supplies farm products, and farm and other equipment and those to be

acquired in the future." ECF No. 1, Exhibit L. Amendments to this financing

statement were filed on June 13, 2013 (as File No. 2013-164-7809-9) and July 19,

2017 (as File No. 2017-200-6973-9). ECF No. 1, Exhibits M, O. A continuation

to this financing agreement was filed on July 19, 2017 (as File No. 2017-200-6958-

6). ECF No. 1, Exhibit N.

[3] This financing statement defined the collateral as "Irrigation pumps, Buried

mainline 4500 feet PVC pipe, 3 Wind machines," with descriptions of three

discrete irrigation pumps and three discrete wind machines. ECF No. 1, Exhibit P

at 2. A continuation to this financing agreement was filed on April 9, 2018 (as File

No. 2018-099-3219-0). ECF No. 1, Exhibit Q.

No. 1359071).  ECF No. 1, Exhibits R, S.  This mortgage was also recorded in the State of Washington.  ECF No. 1, Exhibit S.

Defendants Herring are in monetary default on the 2013 promissory note ("loan #41-03") and on an undescribed promissory note ("loan #44-02") for delinquency on payments, and their account is in non-monetary default.  ECF No. 1, Exhibit T at 2.  Defendants Herring filed for Chapter 7 bankruptcy on March 16, 2018.  Petition, In re Herring, Ch. 7 Case No. 18-705 (Bankr. E.D. Wash. 2018), ECF No. 1.  On August 13, 2018, FSA obtained an order permitting FSA to initiate foreclosure proceedings against the real property at Tax Parcel No. 171179000 and the "farm equipment and titled vehicles . . . identified in the March 6, 2017 security agreement."  Order Granting Motion for Relief from Stay, In re Herring, Ch. 7 Case No. 18-705 (Bankr. E.D. Wash. 2018), ECF No. 54.  One week later, FSA notified Defendants Herring by certified mailing that all debts were due within 30 days or the United States would foreclose on the security instruments securing those debts.  ECF No. 1, Exhibit T.

Defendant State of Washington, Defendant Ralston, Defendants Armstrong, Defendants Ponozzo, and Defendant Brook Lake Orchards (hereinafter "Lienholder Defendants") are believed to claim interests in the real property at issue here.  Defendant State of Washington's claim is valued at $949.05 pursuant to warrant no. 0321836, which was entered on September 22, 2017 in Grant

DEFAULT JUDGMENT AND ORDER OF FORECLOSURE - 4

County Superior Court case no. 17-2-01190-4.  ECF No. 1 at 5, ¶ 12.  The other

Lienholder Defendants asserted their claim(s) in Grant County Superior Court case

no. 17-2-00460-6; this matter was reportedly dismissed without entry of judgment

on December 3, 2018, and the status and value of this claim is unknown.  ECF

No. 1 at 5, ¶ 13.  Of note, Defendants Herring were granted an order of discharge

in their bankruptcy case on October 15, 2018.  Order of Discharge, In re Herring,

Ch. 7 Case No. 18-705 (Bankr. E.D. Wash. 2018), ECF No. 61.

　　　　Under the terms of both FSA mortgages, the proceeds of foreclosure sale

shall be applied in the following order as payment thereof:

> "(a) costs and expenses incident to enforcing or complying with this
> instrument,
> (b) any prior liens required by law or a competent court to be so paid,
> (c) the debt evidenced by the note and all other debt to the
> Government secured by this instrument,
> (d) inferior liens of record required by law or a competent court to be
> so paid,
> (e) at the Government's option, any other debt of Borrower to the
> Government, and
> (f) any balance to Borrower."

ECF No. 1, Exhibit B at 5, ¶ 30; Exhibit S at 5, ¶ 30; ECF No. 18 at 5, ¶ 30.

**A. Procedural History**

On March 3, 2022, Plaintiff filed this foreclosure action to collect on an indebtedness owed by Defendants Lee M. Herring and Sheila M. Herring, husband and wife (Defendants Herring) through foreclosure of security instruments held by FSA, including real property identified as Assessor's Tax Parcel No. 171179000 (Real Property) and personal property described as "Wind machines, [i]rrigation equipment including but not limited to irrigation pumping equipment, irrigation pumps, irrigation pipes, and other irrigation equipment" (Personal Property). ECF No. 1. Plaintiff moved for entry of default on June 9, 2022, and the Clerk of Court entered an order of default on June 13, 2022. ECF Nos. 13, 15. Plaintiff now moves for a default judgment and order of foreclosure. ECF No. 16.

## DISCUSSION

**A. Jurisdiction**

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties" to "determine whether it has the power . . . to enter the judgment in the first place." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citations omitted).

The Court has subject matter jurisdiction over this matter as a civil action commenced by the United States. 28 U.S.C. § 1345.

1    All facts currently before the Court indicate that the Court has personal

2    jurisdiction over all Defendants.  Personal jurisdiction in federal courts is

3    ordinarily determined by the law of the state in which the federal court sits.  *Ranza*

4    *v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015).  Washington state law permits

5    federal courts to exercise personal jurisdiction over defendants to the full extent

6    permitted by constitutional due process and Washington's long-arm statute.  *Shute*

7    *v. Carnival Cruise Lines*, 783 P.2d 78, 79–80 (Wash. 1989); Wash. Rev. Code

8    § 4.28.185.  Personal jurisdiction over the state defendant has been established by

9    service of the summons.  Fed. R. Civ. P. 4(j)(2)(B)–(k); Wash. Rev. Code

10   § 4.92.020; Off. of the Atty Gen., *Electronic Service of Original Summons &*

11   *Complaint*, https://www.atg.wa.gov/electronic-service-original-summons-

12   complaint (last visited Sept. 2, 2022).  Defendants Herring, Defendant Ralston,

13   Defendants Rich and Christine Armstrong, and Defendants Dave and Randi

14   Ponozzo are alleged to be residents of Washington.  ECF No. 1 at 2, ¶ 2.  Plaintiff

15   identifies Defendant Brook Lake Orchards as a Washington corporation.  ECF

16   No. 1 at 1.  The Real Property, in which all Defendants are believed to have an

17   actual or potential interest, is located in this forum.  Defendant Ralston, Defendants

18   Armstrong, Defendants Ponozzo, and Defendant Brook Lake Orchards have

19   asserted their interests in the Real Property by filing an action in a Washington

20   court.  ECF No. 1 at 5, ¶ 13; *see also* Wash. Rev. Code § 4.28.185(1)(a).  It

appears all Defendants have sufficient minimum contacts with this forum related to the instant case to establish specific jurisdiction, even if they were not state residents. *See Walden v. Fiore*, 571 U.S. 277, 283–84 (2014).

## B. Procedural Requirements

The proper process for obtaining an entry of default and a default judgment, is prescribed by Federal Rule of Civil Procedure 55 and Local Rule 55. The Court is satisfied that Plaintiff has complied with these procedural requirements, including that Defendants were properly served with the summons and complaint under Federal Rule of Civil Procedure 4 (through Plaintiff's filing of executed waivers of service) and that Plaintiff's declaration supporting this motion specifies that the Defendants against whom judgment is sought are not infants nor incompetent persons and attests that the Servicemembers Civil Relief Act, 50 U.S.C. chapter 50 (formerly 50 U.S.C. App. §§ 501–597b), does not apply.

## C. Substantive Requirements

### 1. The Eitel Factors

The Court considers certain factors in exercising its discretion to enter a default judgment: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong

policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).  Upon default, the Court assumes that well-pled allegations in the complaint are true.  *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. United States*, 323 U.S. 1, 12 (1944)).  Each *Eitel* factor will be addressed in turn.

First, Plaintiff would suffer prejudice if the Court does not enter default judgment.  Defendants have failed to participate in this litigation and Plaintiff has no other means of recovering payment on Defendants Herrings' indebtedness.  This factor weighs in favor of default judgment.

Second and third, Plaintiff's substantive claim has apparent merit and is sufficiently well-pled.  Plaintiff's complaint adequately sets out the Defendants Herrings' repayment obligations under the promissory notes, as secured by mortgages and security agreements, and that Defendants Herring have failed to maintain such repayments.  *See NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016).  These factors weigh in favor of default judgment.

Fourth, the sum of the money that Plaintiff requests on default judgment ($341,658.71), while significant, is roughly in line with the amount of the original FSA loans ($330,300).  *See* ECF No. 16 at 4–5, 10.  While a large sum of money may weigh in favor of decision on the merits, the amount at stake here directly flows from the loan agreements Defendants Herring executed then breached by

1    nonpayment.  Further, Plaintiff is not seeking a deficiency judgment against

2    Defendants Herring if the value of the foreclosed property fails to cover the loan

3    principal, accrued interest, and Plaintiff's costs of suit.  ECF No. 16 at 10.

4    Defendants Herring will only be liable for the monetary value of their agreed-upon

5    collateral, and not one dollar more.  Meanwhile, the sums of money at stake for the

6    other Defendants is either small ($949.05 for Defendant State of Washington) or

7    unestablished and possibly nonexistent (for Defendants Ponozzo, Defendants

8    Armstrong, Defendant Ralston, and Defendant Brook Lake Orchards).  *See* ECF

9    No. 1 at 5, ¶¶ 12–13.  Accordingly, the fourth factor weighs in favor of default

10   judgment.

11          Fifth, the possibility of a dispute of material fact seems remote.  Again, as

12   Defendants Herring have not responded in this case, all well-pled facts in

13   Plaintiff's complaint are taken as true, except those relating to damages.  *Geddes v.*

14   *United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (citations omitted).  But there

15   is further reason to find a dispute of material fact unlikely.  In their bankruptcy

16   petition, Defendants Herring acknowledged their indebtedness to FSA and that

17   FSA's claim was secured by real estate and equipment.  Petition, In re Herring,

18   Ch. 7 Case No. 18-705 (Bankr. E.D. Wash. 2018), ECF No. 1 at 19–20, 32.

19   Defendants Herring also responded to FSA's motion for relief from stay in the

20   bankruptcy proceedings but only objected to FSA's claims over crop proceeds

1   (which are not at issue here) and FSA's valuation of claimed farm equipment—

2   Defendants Herring did not dispute the fact of their indebtedness or that the real

3   property and farm equipment secured that indebtedness.  Objection, In re Herring,

4   Ch. 7 Case No. 18-705 (Bankr. E.D. Wash. 2018), ECF No. 19.  The fifth factor

5   accordingly weighs in favor of default judgment.

6        Sixth, Defendants' default was not due to excusable neglect.  Plaintiff served

7   Defendant State of Washington with summons in accordance with federal and state

8   procedural rules.  *See* Fed. R. Civ. P. 4(j)(2); Wash. Rev. Code § 4.92.020; Off. of

9   the Atty Gen., *Electronic Service of Original Summons & Complaint*,

10  https://www.atg.wa.gov/electronic-service-original-summons-complaint (last

11  visited Sept. 2, 2022).  Plaintiff completed service of the Summons and Complaint

12  by filing executed waivers of service for all other Defendants.  *See* Fed. R. Civ.

13  Pro. 4(d)(4).  All Defendants were "properly served[] yet ignored the deadline to

14  respond to the complaint."  *See NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616

15  (9th Cir. 2016).  This factor weighs in favor of default judgment.

16       Last, the general rule is that "[c]ases should be decided upon their merits

17  whenever reasonably possible."  *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir.

18  1986) (citing *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir.

19  1985)).  While this factor inherently weighs against default judgment, "the mere

20  existence of" Federal Rule of Civil Procedure 55(b) "indicates that this *Eitel* factor

is not alone dispositive." *See Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1213 (W.D. Wash. 2014) (quoting *Microsoft Corp. v. Lopez*, No. C08-1743, 2009 WL 959219, at *3 (W.D. Wash. Apr. 7, 2009)).

Having reviewed the motion and record in light of the *Eitel* factors, the Court finds the entry of default judgment appropriate in this case.

### 2. *Lienholder Defendants' Competing Claims*

Plaintiff also requests foreclosure of Lienholder Defendants' competing claims. ECF No. 16 at 6–7.

"[T]he court must refer to state law to determine the relative priorities of competing liens." *In re Van de Kamp's Dutch Bakeries*, 908 F.2d 517, 519 (9th Cir. 1990) (citation omitted); *see also United States v. Kimbell Foods*, 440 U.S. 715, 740 (1979) (holding that "absent a congressional directive, the relative priority of private liens and consensual liens arising from [federal] Government lending programs is to be determined under nondiscriminatory state laws"). Under state law, "[c]onflicting perfected security interests . . . rank according to priority in time of filing or perfection." Wash. Rev. Code § 62A.9A-322(a)(1). Perfected interests take priority over conflicting unperfected interests. Wash. Rev. Code § 62A.9A-322(a)(2).

Whether or not the Lienholder Defendants' interests are duly perfected and exempted from the bankruptcy discharge, Plaintiff's interests take priority.

Plaintiff's interests in the Real Property were filed and perfected in 2013 and 2016. ECF No. 1, Exhibits B, S; ECF No. 18; Wash. Rev. Code § 7.28.230(3).  Plaintiff's interest in the Personal Property was perfected by filing of financing statements in 2012 and 2013.  ECF No. 1, Exhibits L, P; Wash. Rev. Code § 62A.9A-310(a). From the information currently before the Court, it appears that Lienholder Defendants' interests were neither filed nor perfected before 2017, if at all.  These Defendants have not appeared, responded to the complaint or Order of Default, or otherwise participated in the pending action.  The Court therefore finds Lienholder Defendants' interests inferior to Plaintiff's interest and foreclosed, except to the extent that Lienholder Defendants have rights of redemption under Wash. Rev. Code chapter 6.23 or surplus funds under Wash. Rev. Code chapter 6.21.

**ACCORDINGLY, IT IS ORDERED:**

**1.**	Plaintiff's Motion for Default Judgment (**ECF No. 10**) is **GRANTED**.

**2.**	Plaintiff is awarded judgment against Defendants Lee M. Herring and Sheila M. Herring in the amount of $341,658.71 (for principal and interest accrued through June 14, 2022); plus interest to accrue at the rate of $24.5049 per day from and after June 14, 2022, to the date of this Judgment; plus interest from the date of this Judgment at the prevailing legal rate until paid in full, for costs of suit, including but not limited to the filing fee

allowed pursuant to 28 U.S.C. § 2412(a)(2); any costs of enforcing the judgment; any costs incurred by FSA to bid at any foreclosure sale, including but not limited to costs of title work and appraisals; and any other relief.  However, no deficiency judgment may be entered against any Defendant, nor shall any money judgment be entered against any Defendant.

**3.**    The debt upon which this Judgment is based is secured and perfected by the following:

a.    A mortgage recorded on June 3, 2013 under Auditor's File No. 1317881, and re-recorded on December 18, 2013 under Auditor's File No. 1327144, in the Official Records of Grant County, Washington. ECF No. 1, Exhibit B; ECF No. 18.

b.    A mortgage recorded February 22, 2016, under Auditor's File No. 1359071, in the Official Records of Grant County, Washington. ECF No. 1, Exhibit S.

c.    Security agreements dated October 31, 2012; December 11, 2012; March 4, 2014; December 31, 2014; May 1, 2015; December 28, 2015; February 16, 2016; September 6, 2016; and March 6, 2017; describing crops, livestock, supplies, other farm products, and farm and other equipment.  ECF No. 1, Exhibits C–K.  These agreements were perfected by the filing of a financing statement on October 31,

2012, under File No. 2012-305-3833-6, with amendments filed on

June 13, 2013 (File No. 2013-164-7809-9) and July 19, 2017 (File

No. 2017-200-6973-9), and a continuation statement filed on July 19,

2017 (File No. 2017-200-6958-6), and a second financing statement

on June 17, 2013, under File No. 2013-170-9187-7, with a

continuation statement filed on April 9, 2018 (File No. 2018-099-

3219-0), all in the Official Records of Washington State, Department

of Licensing.  ECF No. 1, Exhibits L–Q.

**4.** The foregoing mortgages and security agreements cover the following

described property situated in Grant County, State of Washington:

   a.  The real property identified as Assessor's Tax Parcel No. 171179000,

   Section 2, Township 22, Range 28, and further described by

   **Exhibit A** attached hereto and incorporated by reference.

   b.  Personal property described as "Wind machines, Irrigation equipment

   including but not limited to irrigation pumping equipment, irrigation

   pumps, irrigation pipes, and other irrigation equipment."

**5.** Said mortgages and security agreements, which constitute first and prior

liens upon the property described above, are hereby foreclosed.  Defendants

Lee M. Herring and Sheila M. Herring, and all persons claiming by, through,

or under them, are forever barred and foreclosed from asserting any right,

DEFAULT JUDGMENT AND ORDER OF FORECLOSURE - 15

title, or interest in and to said property, except for the statutory rights of redemption under Wash. Rev. Code chapter 6.23 or surplus funds under Wash. Rev. Code chapter 6.21.  The redemption period shall be 12 months.

**6.** The interests of all Defendants are inferior to the interest of the United States.

**7.** After the 10-day automatic stay of proceedings to enforce a judgment, Plaintiff may present a praecipe for an order of sale to the Clerk of Court. *See* Fed. R. Civ. P. 62(a), (f) (imposing a 14-day stay unless otherwise provided by state law for a judgment on a lien); Wash. Super. Ct. Civ. R. 62(a) (imposing a 10-day stay); *see also* 18 Wash. Prac., Real Estate § 19.12 (2d ed.) (describing the enforcement process).

**8.** The United States Marshal for the Eastern District of Washington or his/her representative will be authorized and directed under 28 U.S.C. §§ 2001 and 2002 to offer for public sale and to sell the real property and personal property listed in paragraph 4.  The United States Marshal or his/her representative will be authorized free access to the real property and to take all actions necessary to preserve the real property, including, but not limited to, retaining a locksmith or other person to change or install locks or other security devices on any part of the real property, until the deed to the real property is delivered to the purchaser at the foreclosure sale.

**9.** The United States or any party to the suit may become a purchaser at such sale. The United States Marshal shall execute a Marshal's Certificate of Purchase to the real property in favor of the purchaser, and the purchaser will be let into possession of the premises upon production of the Marshal's Certificate of Purchase. In the event the United States or its agency, Farm Services of America of the United States Department of Agriculture, is a successful bidder on the property, it shall have the right to apply its judgment credits in lieu of cash thereon, and the United States Marshal is authorized to accept such an arrangement.

**10.** The terms of the Order of Sale shall be as follows:

   a. The sale of the real property and personal property shall be free and clear of the interest of Defendants Lee M. Herring and Sheila M. Herring d/b/a L&S Orchards; Defendant Brook Lake Orchards; Defendant Lois Ralston; Defendants Rick Armstrong and Christine Armstrong; Defendants Dave Ponozzo and Randi Ponozzo; and Defendant State of Washington, Department of Labor & Industries, except to the extent that Defendants have a right of redemption under Wash. Rev. Code chapter 6.23 or surplus funds under Wash. Rev. Code chapter 6.21. The redemption period shall be 12 months.

b.  The sale shall be subject to building lines, if established; all laws, ordinances, and governmental regulations (including building and zoning ordinances) affecting the real and personal property; and easements and restrictions of record, if any.

c.  The sale shall be held at the courthouse of the county in which the real property is located, on the real property's premises, or at any other place in accordance with the provisions of 28 U.S.C. §§ 2001 and 2002 and shall be announced in the Notice of Sale.  The date and time for sale are to be announced by the United States Marshal or his/her representative in the Notice of Sale.

d.  The Notice of Sale shall be published once a week for at least four consecutive weeks before the sale in at least one newspaper regularly issued and of general circulation in Grant County, and, at the discretion of the United States Marshal or his/her representative, by any other notice deemed appropriate.  The notice shall contain a description of the real property and personal property; the time, date, and location of the sale as determined by the United States Marshal or his/her representative; the minimum bid as determined by the United States; and the terms and conditions of sale listed in subparagraphs (e)–(l) below.

e. The minimum bids for the real property and personal property will be set by the United States.  If the minimum bid is not met or exceeded, the United States Marshal or his/her representative, with the concurrence of the United States, may, without further permission of this Court and under the terms and conditions in this order of sale, hold a new public sale, if necessary, and reduce the minimum bid as set by the United States, or sell to the highest bidder.

f. The successful bidder(s) for the real property and personal property shall be required to deposit at the time of the sale with the United States Marshal, or his/her representative, a minimum of ten percent (10%) of the bid, with the deposit to be made by certified or cashier's check payable to the United States District Court of the Eastern District of Washington, or cash.  Before being permitted to bid at the sale, bidders shall display to the Marshal, or his/her representative, proof that they are able to comply with this requirement.  No bids will be received from any person(s) who have not presented proof that, if they are the successful bidder(s), they can make the deposit required by this order of sale.

g. The balance(s) of the purchase price for the real property and personal property is to be paid to the United States Marshal within twenty (20)

days after the bid(s) is accepted, by a certified or cashier's check

payable to the United States District Court for the Eastern District of

Washington.  If the bidder fails to fulfill this requirement, the deposit

shall be forfeited and shall be applied to cover the expenses of the

sale, including commissions due under 28 U.S.C. § 1921(c), with any

amount remaining to be applied to the Judgment at issue herein.  The

real property and/or personal property shall again be offered for sale

under the terms and conditions of this order of sale, or, in the

alternative, sold to the second highest bidder if consented to by the

United States.

h.  The sale of the real property and personal property shall be subject to

confirmation by this Court.  The Marshal shall file a report of sale

with the Court, together with a proposed order of confirmation of sale

and proposed deed, within thirty (30) days from the date of receipt of

the balance of the purchase price.

i.  On confirmation of the sale, the Marshal shall execute and deliver a

deed of judicial sale conveying the real property and personal property

to the purchaser(s).

j.  On confirmation of the sale, all interests in, liens against, or claims to,

the real property, personal property, and appurtenances thereof that

are held or asserted by all parties to this action are discharged and extinguished, except to the extent that any Defendant has a right of redemption under Wash. Rev. Code chapter 6.23 or surplus funds under Wash. Rev. Code chapter 6.21.

k. On confirmation of the sale, the recorder of deeds, Grant County, Washington, shall cause transfer of the real property, personal property, and appurtenances thereof to be reflected upon that county's register of title.

l. The sale shall be "as is" without warranty of any kind.

11. Until the real property and personal property are sold, all Defendants shall take all reasonable steps necessary to preserve the real property (including all buildings, improvements, fixtures, and appurtenances on the real property) and personal property in their current condition, including, without limitations, maintaining a fire and casualty insurance policy. They shall neither commit waste against the real property or personal property nor cause nor permit anyone else to do so. They shall neither do anything that tends to reduce the value or marketability of the real property or personal property nor cause nor permit anyone else to do so. They shall not record any instruments, publish any notice, or take any other action (such as running newspaper advertisements or posting signs) that may directly or

indirectly tend to adversely affect the value of the real property or personal

property or that may tend to deter or discourage potential bidders from

participating in the public auction, nor shall they cause or permit anyone else

to do so.

**12.** All persons occupying the real property shall leave and vacate the real

property permanently within thirty (30) days of the date of this Order, each

taking with them his or her personal property (but leaving all improvements,

buildings, fixtures, and appurtenances to the real property and the personal

property listed in paragraph 4).  If any person fails or refuses to leave and

vacate the real property by the time specified in this Order, the United States

Marshal's Office is authorized to take whatever action it deems appropriate

to remove such person from the premises.  Specifically, the United States

Marshal, or his/her designee, is authorized and directed to take all actions

necessary to enter the real property at any time of the day or night and evict

and eject all unauthorized persons there, including Defendants, or any other

occupants.  To accomplish this and to otherwise enforce this Order, the

United States Marshal, or his/her designee, shall be authorized to enter the

real property and any and all structures and vehicles located thereon, and to

use force as necessary.  When the United States Marshal concludes that all

unauthorized persons have vacated, or been evicted from the property,

he/she shall relinquish possession and custody of the property to the United States or its designee.  No person shall be permitted to return to the property and/or remain thereon without the express written authorization by the United States Marshal and/or the United States Department of Justice, or their respective representatives and/or designees.  Unauthorized persons who re-enter the real property during the time this order is in effect may be ejected by the United States Marshal without further order of the Court.

**13.** If any person fails or refuses to remove his or her personal property from the real property, except the personal property listed in paragraph 4, by the time specified herein, the personal property remaining on the real property thereafter is deemed forfeited and abandoned, and the United States Marshal's Office is authorized to remove it and to dispose of it in any manner it deems appropriate, including sale, in which case the proceeds of the sale are to be applied first to the expenses of sale and the balance to be paid into the Court for further distribution.

**14.** The proceeds arising from sale are to be paid to the Clerk of this Court and applied as far as they shall be sufficient to the following items, in the order specified:

    a. First, to the payment of attorneys' fees, costs, and expenses of this suit and this foreclosure;

b.  Second, in payment of the sums adjudged herein to be due to Plaintiff; and

c.  Third, any balance remaining shall be held by the Clerk's Registry to be disbursed to whoever may be lawfully entitled hereto, including Defendants.

**IT IS SO ORDERED.**  The District Court Executive is directed to file this order and provide copies to counsel, the Defendants, and the District Court Financial Administrator.

DATED September 27, 2022.


_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE